**James WILLIAMS, Petitioner–Appellant,**

v.

**Christopher ARTUZ, Respondent–Appellee.**

No. 99–2195.

United States Court of Appeals, Second Circuit.

Argued Aug. 29, 2000.

Decided Jan. 03, 2001.

Jonathan C. Scott, Scott & Scott, LLP, Melville, NY, for Petitioner–Appellant.

Michael S. Morgan, Assistant District Attorney (Robert M. Morgenthau, District Attorney, New York County, Morrie I. Kleinbart, Assistant District Attorney, of counsel), New York, NY, for Respondent–Appellee.

Before NEWMAN, WINTER, and SACK, Circuit Judges.

WINTER, Circuit Judge:

James Williams appeals from Judge Schwartz's dismissal of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Appellant contends that the state trial court's restrictions on entering and exiting the courtroom during a key witness's testimony deprived him of a constitutionally required public trial under *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), even though the court did not exclude the public from any portion of the trial. The state argues, first, that the petition was untimely and, second, that no closure within the meaning of *Waller* took place. We hold that appellant's petition was timely because a state prisoner's conviction becomes

final for purposes of the one-year limitations period under the Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1)(A) ("AEDPA"), when a writ of certiorari has been denied by the United States Supreme Court or the time for seeking such a writ has expired. As to the merits, we hold that the state appellate court did not issue a ruling contrary to, nor did it unreasonably apply, *Waller* when it ruled that the trial court's order limiting courtroom entrance and exit during the testimony of a key witness, but not excluding the public from any portion of the trial, does not violate a defendant's Sixth Amendment right to a public trial. We therefore affirm.

## BACKGROUND

Appellant was charged with murder in the second degree and criminal possession of a weapon in the second and third degrees under N.Y. Penal Law §§ 125.25(1)-(2), 265.03, and 265.02(4). The case went to trial before a jury in New York Supreme Court on January 23, 1991. On the morning of January 28, the state called Nicole Powell, the sole witness connecting appellant to the murder. Early in Powell's testimony, the trial judge found it necessary to admonish spectators in the courtroom to "[b]e quiet, . . . and sit down. If there's any talking you can go out and not come back." Shortly before the afternoon session of Powell's testimony, the trial judge instructed court officers to control entry to or exit from the courtroom during the remainder of Powell's testimony by locking the courtroom doors. Spectators were informed by the court officers that anyone who wished to enter or leave the courtroom before Powell's testimony could do so, but once her testimony began, spectators would be permitted to enter or leave only during breaks. However, the trial judge made no announcement of the closure on the record at that time. Whether a court officer informed the parties of the intended procedure off the record is disputed.

Appellant claims that he and his attorney learned of the closure only after the afternoon session of Powell's testimony had been completed, at which time his trial attorney's Legal Aid supervisor informed them that he had been denied access to the courtroom because the doors were locked. The following morning, January 29, appellant moved for a mistrial on the ground that he had been denied a public trial. The trial judge, in denying the motion, stated:

> When Miss Powell began her testimony yesterday morning on direct examination there was a constant flow of people in and out of this courtroom. . . . Every time the door was opened and closed by people going into and out of the courtroom many if not all of the jurors turned their heads in the direction of the door and away from the witness, Miss Powell. It was my observation that the attention of the jurors was consistently distracted from the witness who was testifying. . . . [D]isruption occurred . . . consistently and persistently throughout the morning.

The trial judge further stated that the court officers had been instructed to make a public announcement as to the intended closure and that he was going to follow the same procedure for the remaining sessions of Powell's testimony. Appellant's counsel responded that he had a continuing objection to the locking of the courtroom doors but did not suggest alternative means of reducing juror distraction during Powell's testimony.

Appellant was convicted on all counts and sentenced to concurrent terms of 25 years to life, 7½ to 15 years, and 3½ to 7 years, and is currently incarcerated. Appellant's conviction was unanimously affirmed by the First Department on January 30, 1996. *See People v. Williams*, 223 A.D.2d 491, 637 N.Y.S.2d 379 (1st Dept. 1996). He was twice denied leave to file an appeal with the Court of Appeals—once on March 12, 1996, *see People v. Williams*, 87 N.Y.2d 1026, 644 N.Y.S.2d 160, 666

N.E.2d 1074 (1996), and once on May 28, 1996, *see People v. Williams*, 88 N.Y.2d 887, 645 N.Y.S.2d 462, 668 N.E.2d 433 (1996)—and his petition to the United States Supreme Court for a writ of certiorari was denied on October 21, 1996, *see Williams v. New York*, 519 U.S. 952, 117 S.Ct. 367, 136 L.Ed.2d 257 (1996).

On October 17, 1997, appellant filed the instant petition *pro se*, raising four grounds for relief. The magistrate judge assigned to the case concluded that the petition had been timely filed, that two of appellant's claims should be dismissed as procedurally defaulted, and that the remaining two claims—including the Sixth Amendment claim of a denial of a public trial—were meritless. With respect to appellant's Sixth Amendment claim, the magistrate found that the trial judge's locking of the courtroom doors "did not amount to a 'closure' for Sixth Amendment purposes." *Williams v. Artuz*, No. 97 Civ. 8740, slip op. at 23 (S.D.N.Y. Nov. 25, 1998) (unpublished report & recommendation).

The district judge adopted the magistrate judge's Report and Recommendation in its entirety, dismissed the petition, and denied a certificate of appealability pursuant to 28 U.S.C. § 1915(a)(3), stating that any appeal would not be taken in good faith. *See Williams v. Artuz*, No. 97 Civ. 8740, slip op. at 1–2 (S.D.N.Y. Mar. 5, 1999) (unpublished order). Appellant filed a notice of appeal and sought a certificate of appealability and the assignment of counsel. We assigned counsel and granted a certificate of appealability limited to the Sixth Amendment claim.

1. Although *Ross* has been cited—in this circuit and elsewhere—for the proposition that the AEDPA limitations period for a state prisoner does not run until after the time to seek direct review via certiorari has expired, *see, e.g., Acosta*, 221 F.3d at 120; *Smith*, 208 F.3d at 15 n. 1; *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir.1999); *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir.1999); *Manley v. Kelley*,

## DISCUSSION

"We review a district court's denial of a petition for a writ of habeas corpus *de novo*." *Farrington v. Senkowski*, 214 F.3d 237, 240 (2d Cir.2000).

### a) Timeliness

Appellant's Sixth Amendment claim does not purport to arise from a decision of the United States Supreme Court rendered subsequent to his conviction. AEDPA imposes a one-year limitations period for petitions based on law existing at the time of the conviction, such as appellant's, starting from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Although appellant filed his habeas petition within one year of the Supreme Court's denial of his petition for a writ of certiorari, more than one year had elapsed after the New York Court of Appeals' final denial of leave to appeal. The state contends that the petition was untimely under AEDPA because the limitations period ran from the conclusion of direct review in the state courts. We disagree.

We have stated in dicta that "direct review," as used in Section 2244(d)(1)(A), refers to direct review by both the state courts and the United States Supreme Court, so that a petitioner's "conviction bec[omes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]." *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998); *accord Acosta v. Artuz*, 221 F.3d 117, 120 (2d Cir.2000); *Smith v. McGinnis*, 208 F.3d 13, 15 & n. 1 (2d Cir.2000).[1] Earlier, we took the oppo-

60 F.Supp.2d 121, 122 (S.D.N.Y.1998), that proposition was not necessary to the holding, because *Ross*'s petition was filed more than one year after his conviction became final whether measured by the denial of leave to appeal by the New York Court of Appeals or the expiration of his time to petition for certiorari. The issue decided in *Ross* was whether prisoners whose convictions became final

site view in dicta in *Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996), *overruled on other grounds by Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[2]

The circuits that have addressed this precise issue—as well as several district courts in this circuit—have held that "direct review," as used in Section 2244(d)(1)(A), includes direct review by the United States Supreme Court via writ of certiorari, and that the limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari. *See, e.g., Bowen v. Roe,* 188 F.3d 1157, 1158–60 (9th Cir.1999); *Smith v. Bowersox,* 159 F.3d 345, 347–48 (8th Cir.1998), *cert. denied,* 525 U.S. 1187, 119 S.Ct. 1133, 143 L.Ed.2d 126 (1999); *Leslie v. Artuz,* 72 F.Supp.2d 267, 274–75 (S.D.N.Y.1999); *Carracedo v. Artuz,* 51 F.Supp.2d 283, 284 (S.D.N.Y.1999); *Manley v. Kelley,* 60 F.Supp.2d 121, 122 (S.D.N.Y.1998).

We agree and conclude that appellant's petition was timely. As the Eighth Circuit recently stated, "[r]eview of a state criminal conviction by the Supreme Court of the United States is considered direct review of the conviction," and it is clear that federal courts have long considered "the phrase 'final by the conclusion of direct review' to include an opportunity to seek certiorari." *Smith,* 159 F.3d at 347. "When Congress elects to use terminology that has become commonplace in court decisions in a particular field of law, the rules of statutory construction call for us to define the statute's terms in harmony with that accepted judicial meaning." *Id.* We agree and hold that the AEDPA limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired. Appellant's petition, which was filed within one year of the denial of certiorari, is therefore timely, and we proceed to the merits.

**b)** *Courtroom Closure*

Under AEDPA, a federal court may grant a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court's ruling is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *accord Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, J., writing for the Court).

Appellant claims that the trial court's locking of the courtroom doors violated his Sixth Amendment right to a public trial because the court never analyzed the closure under *Waller,* and because the closure does not, in any event, pass muster under *Waller.* In affirming appellant's

---

prior to the effective date of AEDPA have a one-year grace period starting on the effective date. *See Ross,* 150 F.3d at 103.

Similarly, our statement in *Smith* that his conviction became final upon "the expiration of the time in which Smith could seek a writ of certiorari from the United States Supreme Court," 208 F.3d at 15 n. 1, was unnecessary because the issue in *Smith* was whether the AEDPA limitations period "began on the date [Smith] exhausted state collateral review or [was] merely tolled while his state application was pending." *Id.* at 15. Finally, our statement in *Acosta* indicating that Acosta's conviction became final when his time to seek

certiorari had expired was also unnecessary because, under either measure of finality, Acosta's conviction had become final prior to the enactment of AEDPA, and, under *Ross,* the limitations period did not begin to run until AEDPA's effective date. *See* 221 F.3d at 120.

**2.** *Reyes* stated that AEDPA requires that habeas petitions "be filed no later than one year after the completion of *state court* direct review." 90 F.3d at 678 (emphasis added). Because *Reyes's* habeas petition was filed before the effective date of AEDPA and the AEDPA's limitations period was inapplicable, *see id.* at 679, the statement was dicta.

conviction, the First Department held simply that appellant's "right to a public trial was not infringed by the trial court's order limiting spectator traffic in and out of the courtroom during a key witness's testimony in light of the court's finding that the jury was being unduly distracted," and cited to a New York Court of Appeals case that predates *Waller*. *People v. Williams*, 637 N.Y.S.2d at 380 (citing *People v. Glover*, 60 N.Y.2d 783, 469 N.Y.S.2d 677, 457 N.E.2d 783 (1983)). Neither the First Department nor the trial court, therefore, identified *Waller* as the Supreme Court decision that governed appellant's claim that the locking of the courtroom doors denied him a public trial under the Sixth Amendment.

■ Under AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle? *Francis S. v. Stone*, 221 F.3d 100, 108–09 (2d Cir.2000) (citing *Williams v. Taylor, supra*).

It is clear that *Waller*—which was decided by the Supreme Court in 1984—was "clearly established" in 1996, when the First Department affirmed appellant's conviction. *See Williams v. Taylor*, 120 S.Ct. at 1523 ("[The phrase, 'clearly established Federal law,'] refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."). *Waller* holds that a courtroom closure will pass muster under the Sixth Amendment if the following four-factor test is met: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the pro-

ceeding, and [4] it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. 2210 (citing *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 511–12, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)).

■ *Waller* applied the above test to a complete courtroom closure during the entirety of a seven-day suppression hearing, during which the matters arguably justifying closure appear to have been limited to only two-and-a-half hours of the proceeding. *See id.* at 42, 104 S.Ct. 2210. In the instant case, however, both parties agree that the closure was neither complete—insofar as it did not exclude the public for any portion of the trial—nor did it last for the entire trial. Rather, the locking of the courtroom doors excluded initially those members of the public who arrived late to court on the afternoon of January 28, 1991 and thereafter members of the public who had no notice of the limited times for entry into the courtroom and arrived while Powell was testifying. Further, those procedures were in place only during Powell's testimony and not during any other part of the proceedings. We therefore cannot say that the First Department's decision in the instant case was "contrary to" *Waller*, because it did not "appl[y] a rule that contradicts the governing law set forth in [the Supreme Court's] cases," nor did it "confront[ ] a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[ ] at a result different from [its] precedent." *Williams v. Taylor*, 120 S.Ct. at 1519–20.

For similar reasons, we cannot say that the trial court's actions, or the First Department's decision constituted an "unreasonable application" of *Waller* or any other Supreme Court decision.

■ With regard to the first *Waller* factor, there can be little doubt as to the reasonableness of a trial court's conclusion that preventing jurors from being distracted during the testimony of a critical trial witness qualifies as an "overriding inter-

est" justifying a restriction on courtroom access. *Waller*, 467 U.S. at 48, 104 S.Ct. 2210. Preventing juror distraction qualifies as an ample justification to limit courtroom entry and exit to times before testimony begins and during breaks. No person was denied access to the trial so long as he or she arrived at the courtroom door in time for the beginning of a court session. And, there is an obvious and compelling interest in preventing juror distraction during testimony. Hearing and absorbing the testimony of witnesses and assessing their credibility is at the core of the jury's function. Fact finding is simply not done well in the presence of distracting conduct, and trial judges have a responsibility to minimize the effect of such conduct.

In the present case, the trial judge concluded that traffic in and out of the courtroom and disruptions in the gallery were preventing the jury from devoting its exclusive attention to a key witness. Locking the courtroom doors to restrict the flow of traffic into and out of the courtroom without denying access to any person who arrived on time was, therefore, a "reasonable time, place, and manner restriction[ ] ... in the interest of the fair administration of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n. 18, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion).

As for the second *Waller* factor, because the doors were locked only during the witness's testimony, the closure was "no broader than necessary." *Waller*, 467 U.S. at 48, 104 S.Ct. 2210.

The third *Waller* factor requires the trial court to "consider reasonable alternatives" to closure. *Id.* But there simply were no reasonable alternatives available to the trial judge. The only alternative appellant suggests in his brief is that the trial court could have "vocally rebuked" unruly spectators—which the trial court had already done once, apparently to no avail—and "ejected any disruptive person entering the courtroom"—which might have exacerbated juror distraction rather than abated it. At oral argument, appellant also suggested that the trial judge could have posted court officers at the door to instruct spectators to be quiet as they entered. However, that conduct itself, as well as the ongoing traffic, risked distraction.

*Waller* also requires that a courtroom closure be supported by "findings adequate to support the closure." *Id.* Here, the trial judge made explicit findings the day after he initially ordered the closure, and, although the trial judge's perception of distraction will ordinarily be enough, evidence of juror distraction also appears on the record. Under these circumstances, the actions of the trial court easily passed the fourth factor of the *Waller* test.

■ Finally, we address appellant's claim that his conviction is constitutionally invalid because he was not informed of the closure before it occurred on January 28.[3] We are aware of no Supreme Court holding that states that a trial court's failure to provide notice to the parties of its implementation of temporal access limitations constitutes a violation of the Sixth Amendment, and appellant points to none. The

3. The trial court never announced its intended procedures on the record prior to locking the courtroom doors and the record is unclear as to whether appellant and his counsel had been informed by court officers of the closure in advance. On the morning of January 29, the trial court explained the previous day's procedures and stated that the court officers had informed all who were present in the courtroom during the afternoon of the 28th that the doors would be locked to limit entry and exit to breaks during Powell's testimony. At no time during the colloquy between the trial judge and defense counsel did counsel contend that he had not been so notified by the court officers. Nonetheless, we will assume that appellant and his counsel did not have notice of the locking of the courtroom doors during the afternoon of January 28. We have no reason, however, to doubt that spectators in the courtroom were informed of the impending closure by court officers.

**154**

district court was therefore barred, by AEDPA, from granting relief on this claim. *See Williams v. Taylor*, 120 S.Ct. at 1523.

We therefore affirm.