Larry ROBINSON, Petitioner,

v.

Thomas RICKS, Superintendent, Upstate Correctional Facility, Respondent.

No. 00–CV–4526(JG).

United States District Court, E.D. New York.

Sept. 7, 2001.

Joel A. Brenner, East Northport, NY, Martin Geduldig, Hicksville, NY, for petitioner.

Charles J. Hynes, District Attorney, Kings County, Brooklyn, New York by Howard Getzler, Assistant District Attorney, for respondent.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

Petitioner Larry Robinson seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The procedural history of his case raises an important question of statutory interpretation. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), imposes a one-year limitations period on federal habeas petitions that begins to run, in most cases, on the date on which the state court judgment becomes final. *See* 28 U.S.C. § 2244(d)(1).[1] Section 2244(d)(2), however, provides that the one-

year period is tolled while a properly filed application for state post-conviction review of the challenged conviction is "pending." Robinson filed such an application, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, and it was denied by the state trial court on February 17, 2000. Ninety-six days later, on May 23, 2000, Robinson sought leave to appeal that denial, an application that was later denied.

The question is whether Robinson's application for post-conviction review was "pending" between its denial by the state trial court and his filing of the application for leave to appeal. Because I conclude it was not, and petitioner has raised no claim that the limitations period should be equitably tolled, the petition is dismissed as untimely.

## BACKGROUND

On the afternoon of August 16, 1988, Perette Andre and her boyfriend, Frenel St. Clair, went to Prospect Park in Brooklyn for a picnic. After some time, the couple laid down on a blanket and fell asleep. Shortly thereafter, an unidentified Hispanic man and a second man, who was later identified as Robinson, arrived in the area near the couple. After the two men whispered to each other, the Hispanic man approached the sleeping couple, stealing jewelry from Andre and a wallet from St. Clair. Robinson was watching from a few feet away. Andre awoke and screamed as her jewelry was being taken. St. Clair awoke and chased the Hispanic man, knocking him to the ground. While they fought, Robinson approached from behind St. Clair and hit him on the back of the head with a small brown object. St. Clair

---

1. The limitations period may not yet commence even after the state court judgment becomes final if one of three conditions (a state-created impediment to filing the petition; a newly-recognized, retroactive constitutional right; or certain newly-discovered facts) is present. *See id.* There is no contention that any of those conditions were present here.

was then stabbed in the heart and killed; the prosecution's witnesses gave inconsistent testimony on the question whether Robinson or the Hispanic man did the stabbing. Both men then fled the park together.

Robinson was charged with murder in the second degree (three counts) and robbery in the first degree (two counts). He was tried twice. In the first trial, the jury acquitted him of intentional murder but deadlocked with respect to the two felony murder counts and the robbery counts. At the conclusion of his second trial, which began on May 21, 1991, Robinson was convicted of felony murder and both counts of robbery in the first degree. On August 28, 1991, he was sentenced to terms of imprisonment of twenty-two years to life for the murder conviction and three to nine years for each robbery conviction. The terms for the robbery convictions were to run concurrently with each other but consecutively to the term for the murder conviction.

A. *The Post–Conviction Litigation in State Court*

On October 29, 1997, Robinson filed an appeal in the New York Supreme Court, Appellate Division, Second Department.[2] He asserted that a lineup identification of him was improperly admitted at trial; that the evidence was insufficient; that the prosecution had committed a *Brady* violation by failing to timely disclose the names and addresses of two witnesses who later disappeared; that he was denied a speedy trial; that the trial court exhibited pro-prosecution bias; that certain evidentiary errors impeded his ability to present a defense; that the jury charge was erroneous in several respects; that the prosecu-

tor committed misconduct in summation; and that the combined sentences were excessive.

On April 6, 1998, the Appellate Division affirmed Robinson's convictions but modified his sentence, ordering all of the prison terms to run concurrently. *People v. Robinson*, 249 A.D.2d 333, 670 N.Y.S.2d 880 (2d Dep't 1998). The court rejected on the merits the claims related to the identification testimony, the sufficiency of the evidence, the *Brady* violation, speedy trial and the jury charge regarding felony murder. *Id.* at 880. The remaining contentions were denied on the ground that they were "either unpreserved for appellate review or without merit." *Id.* Robinson applied for leave to appeal his conviction to the New York Court of Appeals, which denied the application on August 13, 1998. *People v. Robinson*, 92 N.Y.2d 904, 680 N.Y.S.2d 68, 702 N.E.2d 853 (1998).

As mentioned above, on October 6, 1999, Robinson filed a motion to vacate his conviction pursuant to CPL § 440 in the Supreme Court, Kings County, raising claims of ineffective assistance of trial counsel. In a written order dated February 17, 2000, the Supreme Court denied Robinson's § 440 motion. On May 23, 2000, Robinson sought leave to appeal the Supreme Court's denial of his § 440 motion, and leave to appeal was denied on July 12, 2000. On August 4, 2000, Robinson filed the instant petition for a writ of habeas corpus.

Oral argument of the merits of the petition was held on May 11, 2001. At that time, I raised *sua sponte* the question whether the petition had been filed within the one-year limitations period established

---

**2.** At an evidentiary hearing on August 24, 2001, I asked petitioner why he waited over six years before perfecting his appeal. He

explained that it took his mother a long time to save enough money to pay for the appeal.

by AEDPA.[3] *See* 28 U.S.C. § 2244(d)(1)(A). Specifically, I noted that (1) almost eleven months of the period had elapsed before Robinson filed his § 440 motion; and (2) more than three months had elapsed between the February 17, 2000 denial of the § 440 motion and the May 23, 2000 filing of Robinson's application for leave to appeal that denial. If the limitations period was not tolled during the latter period, the petition was not timely filed. Moreover, it appeared that the application for leave to appeal may itself have been untimely, as New York law requires such applications to be filed within 30 days of the defendant's receipt of a copy of the adverse decision from the prevailing party. Thus, even if those 30 days (plus the time it took for Robinson to receive a copy of the decision) were included in the period tolled, the remaining time of approximately two months before the application for leave to appeal was filed might render the petition untimely unless there were a basis for tolling it as well.

I thus directed the parties to file supplemental briefs to address, *inter alia,* the timeliness of the petition, including the facts regarding notice to Robinson of the Supreme Court's denial of the § 440 motion. As a result of the supplemental submissions, an evidentiary hearing on this issue (and one other issue as well[4]) was held on August 24, 2001.

Joel A. Brenner, Esq., who represented Robinson for the § 440 motion and represents him on this petition,[5] conceded that he received actual notice of the decision denying the § 440 motion by mail from the court on February 26, 2000. Moreover, Robinson himself testified that in late February of 2000 he received service of a copy of the order by mail from the District Attorney, together with a "notice of entry." Robinson nevertheless contends that the 30–day period to file for leave to appeal the denial of the § 440 motion was not triggered because New York law required that the District Attorney's service be made on Brenner, rather than Robinson. Robinson further argues that since his application for leave to appeal was timely, the instant petition is also timely because AEDPA's statute of limitations was tolled from the time he initially filed his § 440 motion until the Appellate Division denied his application for leave to appeal, that is, from October 6, 1999, until July 12, 2000.

Robinson's assertion that he timely filed his application for leave to appeal is dubious, both factually and legally. There is evidence that Brenner in fact received service of the decision denying the § 440 motion from the prosecutor, rather than from the judge, as Brenner testified. Moreover, even assuming Brenner and Robinson testified truthfully, only a strained interpreta-

---

**3.** Prior to the oral argument on May 11, 2001, my law clerk telephoned counsel for both sides and informed them that I was going to raise the statute of limitations issue *sua sponte.*

**4.** One of the claims in the petition is that petitioner wanted to testify at the trial but was prevented from doing so by his trial attorneys, Leonard Levenson and Kenneth Berman. At the hearing, Levenson, Berman, petitioner and his mother testified about that issue. I made factual findings at the conclusion of the hearing rejecting petitioner's claim. If the procedural basis for dismissing the petition

were not present, I would reject that claim and all of petitioner's other claims on the merits.

**5.** Brenner did not conduct the evidentiary hearing, partly because he does not conduct such hearings as part of his practice and partly because he was a necessary witness at the hearing on the issue of when and how petitioner was served with the adverse decision of the § 440 motion. Thus, Brenner brought in another attorney, Martin Geduldig, Esq., to assist in the representation of petitioner at the hearing.

tion of New York law would support the conclusion that the District Attorney's prompt service of the § 440 denial on Robinson, viewed together with the court's prompt service on Brenner, was insufficient to trigger the 30–day period to seek leave to appeal. However, in light of my construction of 28 U.S.C. § 2244(d)(2), I need not decide the issue. I conclude that whether or not the application for leave to appeal the denial of the § 440 motion was timely under New York law, Robinson's § 440 motion was not "pending" during the interval between February 17, 2000, when the motion was denied, and May 23, 2000, when the leave application was filed.

## DISCUSSION

### A. The Authority to Raise Sua Sponte the Untimeliness of a Section 2254 Habeas Petition

■ The Second Circuit has held that a district court may raise an AEDPA statute of limitations issue *sua sponte* so long as petitioner has had notice and a prior opportunity to be heard. *Acosta v. Artuz*, 221 F.3d 117, 124–25 (2d Cir.2000). In so holding, the court reasoned that AEDPA's statute of limitations implicates values that transcend the concerns of the parties:

> The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitations implicates interests of both the federal and state courts, as well as the interests of society, and therefore "it

is not inappropriate for the court, on its own motion, to invoke the doctrine."
*Id.* at 123 (quoting *Brown v. Fauver*, 819 F.2d 395, 398 (3d Cir.1987)).

In this case, respondent did not move to dismiss the petition as untimely. However, in advance of the May 11, 2001, oral argument, I informed the parties that they should be prepared to address the issue of timeliness. In addition, the parties were invited to submit supplemental briefs addressing the issue, and an evidentiary hearing was held. Thus, I may properly invoke the doctrine on my own motion. Petitioner does not contend otherwise.

### B. The Statute of Limitations Under AEDPA

■ Robinson was required to file his federal petition for a writ of habeas corpus within a one-year period that ran from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final within the meaning of this provision when the Supreme Court denies a petition for a writ of certiorari. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.2001), *petition for cert. denied*, —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2001 WL 884266 (2001). Where, as here, a state prisoner does not seek certiorari, the conviction becomes final no later than the expiration of the 90–day period for filing such a petition. *Id.; see also* S.Ct.R. 13(1) (establishing 90–day period for filing petition for writ of certiorari). Robinson's conviction became final on November 12, 1998, 90 days after the New York Court of Appeals denied his request for further consideration of his direct appeal.[6] He had one year from that date to file his petition in federal court.

---

**6.** The New York Court of Appeals denied Robinson's request for further consideration of

As mentioned above, the one-year limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). On October 6, 1999, Robinson filed his § 440 motion. At that time, 328 days of the limitations period had elapsed. The New York Supreme Court denied the motion on February 17, 2000. Ninety-six days later, Robinson filed an application for leave to appeal, which was denied on July 12, 2000. Whether the instant petition, which was filed on August 4, 2000, is timely depends therefore on whether AEDPA's statute of limitations was tolled during the entire period between the filing of the § 440 motion on October 6, 1999 and July 12, 2000, when the Appellate Division denied leave to appeal. That inquiry raises two questions. First, were Robinson's § 440 motion, and his application for leave to appeal its denial, "properly filed" applications for State post-conviction relief? Second, assuming they were, during what period or periods were those applications "pending?"

1. *Were Robinson's Post–Conviction Applications "Properly Filed?"*

There is no doubt that Robinson's § 440 motion was a "properly filed" application for post-conviction relief. However, his application for leave to appeal the denial of that motion may well have been untimely.

Specifically, the time within which to file that application likely expired no later than March 31, 2000, 30 days after Robinson and Brenner were separately served with a copy of the order denying the § 440 motion. *See* CPL §§ 450.15 and 460.15.[7] But the application was not filed until May 23, 2000. This delay raises the question whether Robinson's application for leave to appeal would be considered "properly filed" for purposes of § 2244(d)(2) even if it was untimely. I conclude that it would be, and thus need not decide whether the application was timely.

In *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), the Supreme Court held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Id.* at 8, 121 S.Ct. 361. It identified as examples of these "laws and rules" prescriptions relating to "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* Standing alone, that language suggests that Robinson's application for leave to appeal the denial of his § 440 motion would not be "properly filed" if he and his attorney had been properly served with the adverse decision, because he would not then be in compliance with the time limits applicable to its delivery to the state court. However, the Supreme Court expressly declined to address "the question whether the existence of certain exceptions to a timely filing requirement can prevent a

his appeal on August 13, 1998. The 90–day period for filing a petition for a writ of certiorari in the United States Supreme Court ended on November 11, 1998, which was Veterans Day. Supreme Court Rule 30 states that the last day of the filing period shall be included in the computation of any period of time prescribed by the Supreme Court Rules unless it is a Saturday, Sunday, or legal holi-

day listed in 5 U.S.C. § 6103. *See* S.Ct.R. 30(1). Because Veterans Day is listed in 5 U.S.C. § 6103, the last day on which Robinson could have filed a petition for a writ of certiorari was November 12, 1998.

7. Brenner testified that he received his copy on February 26, 2000; Robinson testified that he received his copy in late February 2000.

late application from being considered improperly filed." *Id.* at 8 n. 2, 121 S.Ct. 361 (citing *Smith v. Ward,* 209 F.3d 383 (5th Cir.2000)).

In *Dictado v. Ducharme,* 244 F.3d 724 (9th Cir.2001), the Ninth Circuit held that "if a state's rule governing the timely commencement of state post-conviction relief petitions contains exceptions that require a state court to examine the merits of a petition before it is dismissed, the petition, even if untimely, should be regarded as 'properly filed.'" *Id.* at 727–28. ·It reasoned that a statute of limitations containing exceptions does not impose an absolute bar to filing a petition for post-conviction relief, but rather limits the state court's ability to grant relief. *Id.* at 728. Applying *Artuz,* the Ninth Circuit held that the untimely state petition was properly filed because the statute of limitations at issue "is properly regarded as a 'condition to obtaining relief' rather than a 'condition to filing.'" *Id.* at 728 (quoting *Artuz,* 531 U.S. at 11, 121 S.Ct. 361); *see also Smith,* 209 F.3d at 384 (pre-*Artuz* decision concluding that untimely application for post-conviction relief was properly filed because Louisiana courts will accept and review a prisoner's application to determine whether any statutory exceptions to the time bar are applicable).

▮ Under this reasoning, Robinson's application for leave to appeal the denial of his § 440 motion was properly filed even if it was untimely. As mentioned, New York law provides that an application for leave to appeal the denial of a § 440 motion must be made in writing within 30 days of service on the defendant of the adverse order. *See* CPL §§ 450.15 and 460.15; *see also Bennett v. Artuz,* 199 F.3d 116, 120

(2d Cir.1999) (discussing the rules governing the time limitations and procedures for filing an application for leave to appeal the denial of a § 440 motion), *aff'd,* 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). However, there are exceptions to the 30–day time limit; CPL § 460.30 allows a defendant who wishes to appeal but did not file an application within the prescribed period to seek permission to file a late application up to a year after the period ended.[8] *See* CPL. § 460.30(1). The Appellate Division must accept and review untimely applications for leave to appeal to determine whether any of the exceptions apply. Thus, the 30–day statutory time limit is properly characterized as a "condition to obtaining relief," not a "condition to· filing." *See Artuz,* 531 U.S. at 11, 121 S.Ct. 361. Therefore, even assuming it was untimely, Robinson's application for leave to appeal was nevertheless "properly filed" within the meaning of § 2244(d)(2).

2. *Was Robinson's § 440 Motion "Pending" Between Its Denial by the Trial Court and the Filing of the Application for Leave to Appeal?*

A finding that Robinson's § 440 motion and his application for leave to appeal its denial were properly filed does not end the timeliness inquiry. The timeliness of the instant petition also depends on when his post-conviction motion was "pending" within the meaning of AEDPA's tolling provision. Specifically, the question is whether Robinson's § 440 motion remained pending during the 96–day period between the New York Supreme Court's denial of the motion and the filing of Robinson's application for leave to appeal. If the § 440 motion was not pending during that period, the petition is untimely.[9]

---

**8.** There are several grounds for a § 460.30 motion, including "improper conduct, death

or disability of the defendant's attorney." *See* CPL § 460.30(1).

**9.** As stated above, 328 days elapsed between

### a. *The Effect of Bennett v. Artuz on this Case*

At first glance, it appears as though the Second Circuit answered this question in Robinson's favor when it made the following statement in *Bennett v. Artuz:*

> If we were to hold that a post-conviction petition is not pending before state courts during the intervals between disposition and appeal, we would force appellants into federal court prematurely, before "giv[ing] ... state courts [a] full opportunity to resolve any constitutional issues." We therefore hold that a state-court petition is "pending" from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures.

199 F.3d 116, 119–120 (1999) (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)) (alterations in original). This language, which has been described by the Second Circuit [10] and other circuits as well as the holding in *Bennett,*[11] is more accurately characterized as *dictum.*

In *Bennett,* the petitioner's § 440 motion had been denied orally by the trial court in 1995, but the petitioner claimed that he had never received a copy of the order, even after writing numerous letters to the state court requesting information about the disposition of the motion. Because there had not been "service upon the [petitioner] of a copy of the order sought to be appealed," CPL § 460.10(4)(a), his 30–day period within which to seek leave to appeal never commenced, and he never sought leave to appeal. *Id.* at 120. Crediting the petitioner's assertion that he had never been served with a copy of the adverse decision of the motion,[12] the Second Circuit held that the § 440 motion was still "pending" within the meaning of 28 U.S.C. § 2244(d)(2) in 1998, when he filed his federal petition. *Id.* at 120 (citing *People v. Washington,* 86 N.Y.2d 853, 854, 633 N.Y.S.2d 476, 657 N.E.2d 497 (1995)) (holding that "service by the prevailing party is necessary under CPL 460.10 in order to commence the time period for the other party to take an appeal").

■ I believe the holding of *Bennett* is accurately described as follows: a § 440 motion may remain "pending" even after it has been decided, potentially for years, so long as the adversely affected defendant was not served with a copy of the decision and did not seek review of it in state court. I respectfully find that holding difficult to reconcile with the plain meaning of the word "pending," as described more fully below, but in any event it does not control this case.[13]

---

the time Robinson's conviction became final and his filing of the § 440 motion. An additional 23 days elapsed after the denial of the leave to appeal on July 12, 2000, and the filing of the instant petition on August 4, 2000.

**10.** *See Hizbullahankhamon v. Walker,* 255 F.3d 65, 70 (2d Cir.2001).

**11.** *See, e.g., Melancon v. Kaylo,* 259 F.3d 401, 405–06 (5th Cir.2001); *Williams v. Cain,* 217 F.3d 303, 309–10 (5th Cir.2000).

**12.** The Second Circuit expressly stated that the question whether the petitioner had actually received a copy of the order denying his

§ 440 motion would be a factual question requiring resolution on remand. *Bennett,* 199 F.3d at 118.

**13.** I do not mean to suggest that the law fails to accommodate the legitimate concerns of state prisoners who do not receive actual notice of adverse decisions despite diligent efforts like those apparently undertaken by the petitioner in *Bennett.* As discussed below, such circumstances may well support a claim for equitable tolling of the statute of limitations.

Robinson contends that *Bennett* controls here despite (a) the prompt service on Brenner (by the court) of a copy of the order denying the § 440; (b) the prompt service on Robinson (by the prosecutor) of a copy of the decision, together with a notice of entry; and (c) the filing of an unsuccessful application for leave to appeal. Even as Brenner states the argument, it defeats itself. In his letter to the court dated May 23, 2001 (at page 3), Mr. Brenner states as follows with reference to the service of the order denying Robinson's § 440 motion: **"I did not receive any such paper from respondent!** Since respondent never served me with a copy of the lower court order with Notice of Entry, the 30 day period for me to file the leave application *never* began to run." (Bold type in original; italics supplied.) According to Robinson, therefore, *Bennett* requires the conclusion that his § 440 motion is "pending" to this day in the state trial court, even though it was actually denied, service was promptly effected on both him and his attorney, leave to appeal was sought, and leave to appeal was denied. Whatever the merit of *Bennett*'s conclusion that the § 440 in that case remained "pending" years after it was denied, the case does not compel the absurd conclusion that Robinson's § 440 motion is still pending in the state trial court.

Put another way, the Second Circuit's statement in *Bennett* that "a state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures," 199 F.3d at 120, and its reference to "intervals between disposition and appeal," *id.*, were far broader than necessary to resolve the case before the court. There was no such "interval" at all in that case; indeed, there was no appeal of the denial of the § 440 motion in the state court. And the § 440 motion was never "finally disposed of,"

with further review becoming available, again because the petitioner in that case never filed an application for leave to appeal.

Where its pronouncements are not necessary to the resolution of the particular case in which they are made, the Second Circuit has not hesitated to characterize those pronouncements as *dicta*. *See Williams*, 237 F.3d at 150–51 & n. 1 (although *Ross v. Artuz*, 150 F.3d 97 (2d Cir.1998), had been cited by various courts, including the Second Circuit, as holding that the AEDPA limitations period does not commence until the expiration of the time for seeking direct review via certiorari, that part of *Ross* was mere *dicta* because it "was not necessary to the holding" in the case); *Ross v. Artuz*, 150 F.3d at 97 (although *Peterson v. Demskie*, 107 F.3d 92 (2d Cir.1997), had stated that habeas petitioners whose convictions became final before AEDPA became effective need not be given a full year after the statute's effective date to file their federal petitions, "that statement was not necessary to our decision," and thus was *dicta*); *cf. Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001) (declining to decide whether AEDPA's deferential standard of review of state courts' decisions of federal constitutional questions is conditioned on their explicit reference to federal law because even *de novo* review of the challenged state court decision warranted the denial of the petition). *Bennett* did not involve a petitioner who had been served with the order denying his § 440 petition and had actually sought leave to appeal that denial. To the extent its language appears to be applicable to such circumstances, it is mere *dicta*, and thus it does not control the outcome of this case. *See also Swartz v. Meyers*, 204 F.3d 417, 422 (3rd Cir.2000) ("We recognize that portions of [the] self proclaimed

'holding [ ]' in *Bennett* ... are actually dicta.")

### b. *The meaning of "pending."*

■ The starting point for statutory interpretation is the language of the statute itself. *See, e.g., Duncan v. Walker,* —— U.S. ——, ——, 121 S.Ct. 2120, 2124, 150 L.Ed.2d 251 (2001). When Congress does not expressly define a statutory term or phrase, a court should "normally construe it in accord with its ordinary or natural meaning." *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *see also Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001) (when Congress uses a term with a well-settled meaning, "we presume that it speaks consistently with the commonly understood meaning" of the term). Where "the statute's language is plain, 'the sole function of the courts is to enforce it. according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

Congress provided no definition of the term "pending" in AEDPA, but the word has a common meaning among lawyers and judges. A case is considered "pending" when it remains undecided, awaiting decision. *See Geraci v. Senkowski,* 23 F.Supp.2d 246, 252 (E.D.N.Y.1998) ("the word 'pending' in § 2244(d)(2) has an unambiguous meaning: a motion is pending if it has been filed with the Court but has yet to be decided"), *aff'd,* 211 F.3d 6 (2d Cir.), *cert. denied,* 531 U.S. 1018, 121 S.Ct. 581, 148 L.Ed.2d 497 (2000). In the context of a post-conviction challenge to a New York conviction, a § 440 motion is commonly understood to be pending before the state trial court until that court decides it. If it denies relief, no further action, such as entry of judgment, occurs

or is required by the trial court. Rather, the order denying relief is itself immediately appealable, provided a certificate granting leave to appeal is obtained. *See* CPL §§ 450.15, 460.10. Thus, if a § 440 motion is denied, it is no longer considered pending in the court that denied it. Nor is an appeal from such a denial generally considered pending until the application for leave to appeal is filed.

These commonly understood meanings of the term are consistent with the dictionary definitions to which courts often turn in the absence of a legislative definition. *See, e.g., MCI Telecommunications Corporation v. American Telephone and Telegraph Co.,* 512 U.S. 218, 225, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994); *Sellan,* 261 F.3d at 311. Black's Law Dictionary defines "pending" as "[r]emaining undecided; awaiting decision." *Black's Law Dictionary* 1154 (7th ed.1999). Other dictionaries define the term similarly. *See Webster's Third New International Dictionary* 1669 (1993) ("not yet decided: in continuance: in suspense"); *The Random House Dictionary of the English Language* 1065 (1966) ("remaining undecided; awaiting decision or settlement; unfinished"); *The Oxford English Dictionary* Vol. XI, at 468 (2d ed.1989) ("[r]emaining undecided, awaiting decision or settlement").

Thus, a commonsense reading of the word "pending" in § 2244(d)(2) requires the conclusion that a § 440 motion is pending while it is before a court awaiting decision. To construe the term otherwise, that is, to say that a post-conviction motion remains "pending" even where there is no undecided application before any court, would distort the plain meaning of the term.

■ The structure of the statute as a whole further compels the conclusion that § 2244(d)(2) was not designed to toll the limitations period during the interval be-

tween the denial of an application for post-conviction relief and the filing of an appeal (or an application seeking leave to appeal) from such a denial. *See Lexecon Inc., v. Milberg Weiss Bershad Hynes & Lerach et al.,* 523 U.S. 26, 36, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ("[A] statute is to be considered in all its parts when construing any one of them."). First, a comparison of the provision with another tolling provision in AEDPA reveals that if Congress had intended to include the entire state post-conviction relief process, including gaps like the one at issue here, in the period tolled pursuant to § 2244(d)(1)(A), it knew precisely how to do so. Section 2263(b)(2) is the death-penalty counterpart to § 2244(d)(2), tolling the statute of limitations applicable to federal habeas petitions that challenge capital convictions. The limitations period applicable to such petitions is tolled not merely while applications for state post-conviction review are "pending," but rather "from the date on which the first petition for post-conviction review or other collateral relief is filed until the final State court disposition of such petition." 28 U.S.C. § 2263(b)(2). The different language in § 2244(d)(2) indicates that Congress did not intend the statute of limitations in non-capital cases to be tolled during the entire post-conviction review process, but rather only when such proceedings were actually pending before a state court. *See Duncan,* 121 S.Ct. at 2124 (interpreting the phrase "other collateral review" and reasoning that "a comparison of the text of § 2244(d)(2) with the language of other AEDPA provisions supplies strong evidence that, had Congress intended to include federal habeas petitions within the scope of § 2244(d)(2), Congress would have mentioned 'Federal' review expressly."); *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of

a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Second, a comparison of § 2244(d)(1)(A), which in this case determines when the limitations period commences, and § 2244(d)(2), which provides for its tolling, supports the conclusion that Congress did not intend § 2244(d)(2) to toll the limitations period during the intervals between the various stages of the post-conviction review process. Under § 2244(d)(1)(A), a state court "judgment" becomes "final," and the one-year period commences, on "the conclusion of direct review or the expiration of the time within which direct review might be sought." Thus, the mere availability of judicial review will prevent a judgment from becoming final, and delay the onset of the limitations period, even if no such proceeding is actually commenced. This stands in sharp contrast to § 2244(d)(2), which tolls the period once it has commenced only while a properly filed "application" for collateral review is "pending." In effect, Robinson's proposed interpretation of § 2244(d)(2) imports into that provision, to define when state collateral review is "pending," the part of § 2244(d)(1) that defines when direct review becomes final—that is, it would define "pending" to include not only the period in which the application for collateral review remained undecided, but also further periods, as long as the time for seeking review of an adverse decision has not expired.

Finally, a straightforward construction of the term "pending" is consistent with the statute's purpose and policy. AEDPA was enacted to place new constraints on the filing of federal habeas petitions, including the one-year limitations period. The House Report on AEDPA states:

[T]he bill is designed to reduce the abuse of habeas corpus that results from delayed and repetitive filings.... To help accomplish [this] purpose, the bill imposes periods of limitation on federal habeas corpus petitions filed under 28 U.S.C. section 2254.... This reform will curb the lengthy delays in filing that now often occur in federal habeas corpus litigation, while preserving the availability of review when a prisoner diligently pursues state remedies and applies for federal habeas review in a timely manner.

H.R.Rep. No. 104–23, at 29 (1996). Limiting the tolling provision to periods when state post-conviction applications remain undecided by the state courts, *i.e.*, excluding from its coverage potentially lengthy gaps between levels of state court review, will encourage the diligent pursuit of remedies in those courts. In turn, that will curb delays in state post-conviction litigation and accelerate the federal habeas process. *See Duncan,* 121 S.Ct. at 2128 ("The 1–year limitation period of § 2244(d)(1) quite plainly serves the well-recognized interest in the finality of state court judgments. This provision reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review.") (citation omitted).

### c. *Other Courts' Treatment of the Issue*

#### (i) *Bennett's dicta*

The straightforward construction of the term "pending" adopted here will not, as the Second Circuit suggested in *Bennett,* "force [petitioners] into federal court prematurely, before 'giv[ing] ... state courts [a] full opportunity to resolve any constitutional issues.'" *Bennett,* 199 F.3d at 119–20 (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). This may have been true when

*Bennett* was written, as it was then assumed (and later held) by the Second Circuit that a federal petition tolled the statute of limitations under § 2244(d)(2). However, in light of *Duncan's* reversal of that premise, *see* , 121 S.Ct. at 2129, I do not believe that excluding the intervals at issue here from the tolling provision will produce premature federal petitions. To the contrary, in tandem with the exhaustion requirement, *see* 28 U.S.C. § 2254(b)(1), it would serve only to "force" state defendants to pursue expeditious appellate review *in state court* of their applications for post-conviction review, a result that is consistent with the purpose of AEDPA.

Moreover, even if the result of this ruling were, for some reason, to force state prisoners to file federal habeas petitions before exhausting all of their claims in state court, that would not be a bad result. First, the Second Circuit has stated as recently as last year that state prisoners ought to be encouraged, and indeed rewarded, for filing their federal petitions as soon as possible, because doing so "leads to speedier completion of collateral review." *Walker v. Artuz,* 208 F.3d 357, 360–61 (2d Cir.2000), *rev'd, Duncan v. Walker,* —— U.S. ——, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). Second, such "mixed petitions" are not uncommon, and the Second Circuit has recently recommended a procedure for dealing with them in the post-AEDPA world. Since the federal petition itself does not toll the limitations period, *see Duncan,* 121 S.Ct. at 2129, a district court should consider dismissing only the unexhausted claims and staying (rather than dismissing) the remaining claims. *Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001). Furthermore, the district court "should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal

court within a similarly brief interval, normally 30 days after state court exhaustion is completed." *Id.* at 381. Thus, the effect of a premature federal petition would allow the federal court to exercise reasonable control over when the state prisoner presents his collateral attack to the state court, rather than leave that issue to the vagaries of state procedural requirements.

(ii) *The Other Circuits*

I recognize that the weight of authority supports a different result. "Every circuit that has addressed the issue has found that a state application is 'pending' during the intervals between the state court's disposition of a state habeas petition and the petitioner's timely filing of a petition for review at the next level." *Melancon v. Kaylo,* 259 F.3d 401, 405–06 (5th Cir.2001); *see also Swartz,* 204 F.3d at 420; *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir.1999), *cert. denied,* 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000); *Fernandez v. Sternes,* 227 F.3d 977, 980 (7th Cir.2000); *Peterson v. Gammon,* 200 F.3d 1202, 1203 (8th Cir. 2000); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999), *cert. denied,* 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000); *Barnett v. Lemaster,* 167 F.3d 1321, 1323 (10th Cir.1999). The most frequently cited justification for these decisions is that the principle of comity underlying the exhaustion doctrine would be undermined by refusing to toll the statute of limitations during the intervals between state court proceedings. *See, e.g., Nino,* 183 F.3d at 1005 ("a contrary construction would be antithetical to the entire theory of state remedy exhaustion"); *Swartz,* 204 F.3d at 420 (tolling between the state court's denial of post-conviction relief and a timely appeal is consistent with "the firmly rooted principle of state-remedy exhaustion"); *Taylor,* 186 F.3d at 561 ("[W]e believe that tolling the entire period of state [post-conviction] proceedings upholds 'the principle of comity that underlies the exhaustion doctrine.' ") (citations omitted); *Barnett,* 167 F.3d at 1323 ("We conclude the term 'pending' must be construed more broadly to encompass all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.").

I respectfully disagree. There is a difference between undermining the state courts' right to pass first on federal constitutional challenges to convictions obtained in their courts and requiring state prisoners to pursue such review without unnecessary delay. The tolling provision in § 2244(d)(2) produces the latter result, not the former. As long as a prisoner has filed an application for post-conviction review, or for review of the denial of such an application, AEDPA provides for state courts to take all the time they need to properly decide the federal questions. Congress's desire to shorten the gaps between the levels of such review in the state system does not violate the principle of comity underlying the exhaustion doctrine.

As discussed *supra,* one basis for my decision is the careful distinction within § 2244(d) between a state "judgment" becoming "final," which triggers the limitations period, and a properly filed "application" being "pending," which tolls it. The former event takes into account periods in which appellate review was available, whether or not it was sought, while the latter conspicuously (and, I believe, deliberately), does not. Another reason I am unpersuaded by the cases that adopt broader interpretations of the term "pending" is that they routinely disregard that distinction. In *Swartz,* for example, the Third Circuit explicitly conflated the two terms. To define the term "pending," it applied the definition of "final," which led

the court "to the conclusion that for purposes of § 2244(d)(2) 'pending' includes the time for seeking discretionary review, whether or not discretionary review is sought." [14] 204 F.3d at 421. Indeed, this approach has spawned a body of case law that virtually substitutes the § 2241(d)(1)(A) definition of "final" for the term "pending" in the tolling provision in § 2244(d)(2). Specifically, the Fifth, Seventh and Tenth Circuits have all held that, although post-conviction applications are "pending" between one state court's disposition and a timely filed appeal, they cease to be "pending" after the applicable period to appeal has expired. *Melancon,* 259 F.3d 401, 406–07; *Fernandez,* 227 F.3d at 980; *Gibson v. Klinger,* 232 F.3d 799, 807 (10th Cir.2000). If Congress had intended such a result, it could readily have provided for tolling until state collateral review becomes "final" by the conclusion of such review or the expiration of the time for seeking such review. Alternatively, it could have defined "final" by reference to "the final state court disposition of such petition," as it did in § q2263(b)(2) for capital habeas petitions. Rather, Congress provided for tolling only while a specific, filed application for collateral review is "pending." Its failure to use the terminology of either § 2244(d)(1)(A) or § 2263(b)(2), and its use of the unambiguous word "pending" instead, requires the narrower construction of the tolling provision that I employ here.

While there are a substantial number of cases that reach a *different* result than the one I reach here, they hardly reach the *same* result, and for that reason as well

they do not constitute a monolithic body of contrary authority. Indeed, once they stray from the principle that "pending" means "undecided," they wind up all over the place.

For example, the Ninth Circuit says the entire time—from the commencement of the post-conviction motion to its final resolution, no matter how long the "gaps" or how untimely the appeals—is tolled as long as the state's highest court entertains the appeal. *See Saffold v. Newland,* 250 F.3d 1262, 1265–66 (9th Cir.2000). As the Seventh Circuit has observed, the "ninth circuit did not explain how time during which no collateral attack is pending in state court may be deemed time 'during which a properly filed application for State ... collateral review ... is pending.'" *Fernandez,* 227 F.3d at 980.

Other courts will toll only those periods "in which the petitioner *could have* sought an appeal under state law." *Gibson,* 232 F.3d at 803–04 & n. 1; [15] *see also Swartz,* 204 F.3d at 424; *Mills v. Norris,* 187 F.3d 881, 884 (8th Cir.1999). The rationale here is that when a petitioner is permitted by law to file an appeal, the courts presume he is attempting to appeal. *Gibson,* 232 F.3d at 804. This is especially unpersuasive, as it equates a presumed preparation for an available appeal with a "pending" judicial proceeding, and does so even if no appeal is filed.

The Seventh Circuit has yet another approach. It finds it "sensible" to deem a post-conviction motion to be "pending" during the period when it could be filed,

---

14. Although the definition of "final" that the court was applying had been articulated in a prior case arising under 28 U.S.C. § 2255, the Third Circuit made it clear that it was the same definition as that provided by § 2244(d)(1)(A). *See Swartz,* 204 F.3d at 421 & n. 4.

15. If I concluded that this was the correct rule, I would need to decide the question I have reserved, that is, whether Robinson's time under New York law within which to seek leave to appeal expired in late March of 2000.

but only if it is in fact filed. *Fernandez,* 227 F.3d at 980. The Eighth Circuit appears to have adopted the same approach in *Peterson v. Gammon,* 200 F.3d 1202, 1205 (8th Cir.2000) ("The ordinary meaning of the word 'pending,' in our view, includes the entire period during which a notice of appeal from a denial of postconviction review would be timely, assuming such a notice was in fact filed...."), but that decision conflicts with its decision just five months earlier in *Mills. See* 187 F.3d at 884 ("[W]e conclude that the state postconviction appeal was 'pending' for purposes of § 2244(d)(2) until ... the end of [the] ninety-day period" that petitioner was allowed to perfect his appeal under state law even though he failed to do so).

These and other differences in the various applications of the term "pending" in § 2244(d)(2) are understandable; untethered by the plain meaning of the term, and searching for a tolling provision that seems sensible and workable against a backdrop of widely divergent state procedural rules, courts have reached different results. But in light of that plain meaning, and the structure and purpose of AEDPA, I find their efforts unjustified.

#### d. *The Effect of a Plain Meaning Interpretation of "Pending"*

If giving the term "pending" in § 2244(d)(2) its ordinary meaning produces results that are unfair, the place to fix the problem is Congress. At any rate, I do not perceive such unfairness for several reasons.

First, only state prisoners who wait until close to the end of their one-year grace period for filing their federal habeas petitions will have cause for concern. In practical terms, they will have waited nearly 15 months, for the overwhelming majority of such prisoners do not petition for Supreme Court review of their direct appeals, yet the 90 days provided for doing so nonetheless delays the onset of the limitations period. It strikes me as reasonable to expect state prisoners to prepare their state post-conviction applications sufficiently in advance of the end of their limitations period so that the intervals between trial and appellate courts' resolution of those applications do not consume more than the remaining time.

Second, even where a state prisoner has put himself in a bind by waiting until the last moment, it is also reasonable to expect him to be ready to seek available appellate review promptly if his application is denied. In New York, and I suspect elsewhere as well, appeals (or applications for leave to appeal) frequently take the form of a document seeking review based on the record below. Even where supplemental argument or factual presentations are necessary or desired, nothing precludes a state prisoner (with or without counsel) from commencing the appellate process promptly—that is, from getting it "pending"—and then seeking permission to file such supplemental material.

It is true that there may be circumstances in which a prisoner who has waited until the last moment to file his state post-conviction application might possibly be prejudiced by a plain-meaning construction of the term "pending" no matter how diligent he becomes in pursuing state appellate review. For example, assume a § 440 motion is filed with one day remaining in the limitations period. That motion ceases to be "pending" the day it is decided, but the prisoner is not aware of that until three days later, when his jailer hands him the order. Similarly, even if he simultaneously hands his application for leave to appeal (which he prepared in anticipation of the denial by the trial court) to the jailer, that application does not become a "pending" one until three days later, when

it is received and filed in the appellate court. Since the six-day period during which the state post-conviction application was not "pending" consumes more than the one day remaining, the petition is arguably untimely.

Of course, I need not address such a case here, but I note that existing doctrine may well eliminate any perceived unfairness in such a result. The three-day delay in receiving notice of the trial court's decision may support a claim of equitable tolling. Though such tolling is limited to rare and exceptional circumstances that prevent a petitioner from filing his federal petition on time, *see Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.), *cert denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000), the circumstance I described above may fit that description.

■ As for the three-day delay in filing the application for leave to appeal, the hypothetical state prisoner might find refuge in the "prison mailbox" rule. That rule, which originated in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), provided that a *pro se* prisoner's notice of appeal is deemed filed when he delivers it to prison authorities for mailing to a federal court. *Id.* at 270. The Second Circuit has extended it to state prisoners' filing of federal habeas petitions. *See Adeline v. Stinson,* 206 F.3d 249, 251 n. 1 (2d Cir.2000). Although it has never held that the rule applies to a state prisoner's filing of an application for leave to appeal the denial of a § 440 motion, and there is authority to the contrary,[16] the Second Circuit has assumed that the rule applies in that setting in at least one unpublished decision. *See Milbank v. Senkowski,* 2000 WL 1459030, at *1 (2d Cir. Sept.29, 2000). Thus, the hypothetical

state prisoner might be afforded relief under that rubric. If not, his equitable tolling argument might well succeed in addressing the second three-day delay as well.

*CONCLUSION*

Because Robinson's § 440 motion was not "pending" during the 96–day period between February 17, 2000, when the trial court denied it, and May 23, 2000, when Robinson sought leave to appeal the denial, the instant petition is untimely. Accordingly, the petition is dismissed. A certificate of appealability shall issue.

So Ordered.

---

**16.** *See Fernandez v. Artuz,* 2001 WL 506889, at *4 (S.D.N.Y. May 15, 2001) (concluding that New York Court of Appeals would not apply the prisoner mailbox rule, but rather would rule that papers are considered filed only upon receipt by the court).