**Garwin BOBB, Petitioner–Appellant,**

v.

**Daniel SENKOWSKI, Superintendent, Fishkill Correctional Facility and Dennis Vacco, New York State Attorney General, Respondents–Appellees.**

**Docket No. 99–2259.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 25, 1999.

Decided: Nov. 4, 1999.

Richard Joselson, The Legal Aid Society, N.Y., N.Y., for Petitioner–Appellant.

Karol B. Mangum, Ass't Dist. Att'y, Brooklyn, N.Y., for Respondents–Appellees.

Before: FEINBERG, OAKES, and POOLER, Circuit Judges.

PER CURIAM.

Garwin Bobb appeals from the judgment of the United States District Court for the Eastern District of New York (Korman, *J.*) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and granting a certificate of appealability. Bobb claims that he was denied his constitutional right to a public trial when the state trial judge closed the courtroom during the testimony of an undercover police officer.

Bobb was convicted on July 9, 1990 in New York State Supreme Court on one count of first degree criminal sale of a controlled substance; two counts of third degree criminal sale of a controlled substance; two counts of third degree criminal possession of a controlled substance; one count of third degree criminal possession of a weapon; and one count of second degree criminal use of drug paraphernalia. The state court sentenced Bobb to concurrent prison terms of twelve and one-half to twenty-five years on each count of third degree possession and sale, three and one-half to seven years on the weapons count and one year on the paraphernalia count, all of which were consecutive to a term of twenty-five years to life imprisonment on the first degree sale count. That sentence was modified to twelve and one-half years to life on the reduced count of criminal sale in the second degree.

The State moved for closure of the courtroom during the testimony of Officer # 6562 and the court conducted a hearing mid-trial. Officer # 6562 testified that he was currently working as an undercover officer for the Manhattan South Narcotics District. His most recent undercover work was in Manhattan and Staten Island. Prior to that, he spent one year in the Brooklyn South Narcotics unit. At the time of his testimony, Officer # 6562 stated that he was involved in buy and bust cases in New York County and testified before the Grand Jury there approximately twice a week. Officer # 6562 further testified that during the last six months there were as many as seven "lost subjects" or unapprehended sellers from whom he had purchased drugs. The undercover officer further testified that he was no longer involved in any investigation regarding a lost subject in Brooklyn.[1] Officer # 6562 stated that he feared for his safety if he were to testify in open court because if anyone saw him it would "blow his cover" as an undercover police officer and it might endanger his life. The State argued in support of closure that the risk that Officer # 6562's identity would become known was heightened by the fact that almost all the courtrooms on that floor were devoted to narcotics cases. The State further contended that Officer # 6562's public testimony would prevent him from effectively working in Brooklyn

---

1. However, other witnesses for the prosecution testified that there were three "lost" subjects in this case.

as an undercover police officer in the future.

Defense counsel responded that it had been a year since # 6562 had been involved in an investigation in Brooklyn. Counsel also disputed the State's contention that the location of the courtroom heightened the risk to the officer's safety. The court granted the motion to close the courtroom during the testimony of Officer # 6562, stating, "I don't think the Medahin [sic] respects international boundaries so I don't think they're going to get too upset about county lines and for the integrity of the police officer and safety and for the reasons advanced by the District Attorney ... I will seal the courtroom." The trial resumed and the courtroom was closed during the testimony of Officer # 6562.

On appeal, Bobb argued that 1) the trial court should not have admitted a controlled substance lab report without proper authentication; 2) the trial court improperly closed the courtroom during the testimony of an undercover police officer; 3) the court improperly allowed the People to introduce a statement that had been precluded on *Miranda* grounds; and 4) the sentence was excessive. On August 15, 1994, the Appellate Division reduced defendant's conviction for criminal sale of a controlled substance in the first degree to a conviction for criminal sale of a controlled substance in the second degree and remanded for resentencing. *See People v. Bobb,* 207 A.D.2d 458, 615 N.Y.S.2d 764 (2d Dept.1994). The New York Court of Appeals declined to review the case. *See People v. Bobb,* 84 N.Y.2d 1009, 622 N.Y.S.2d 921, 647 N.E.2d 127 (1994). The Appellate Division rejected Bobb's appeal of his modified sentence. *See People v. Bobb,* 222 A.D.2d 1132, 635 N.Y.S.2d 406 (2d Dept.1995), and the New York Court of Appeals once again denied defendant's application for leave to appeal. *See People v. Bobb,* 87 N.Y.2d 919, 641 N.Y.S.2d 601, 664 N.E.2d 512 (1996).

On April 21, 1997, Bobb filed a petition for a writ of habeas corpus in the Eastern District of New York, claiming that he was denied his right to a public trial. In an oral decision issued February 4, 1999, the district court denied habeas relief. Relying on *Brown v. Kuhlmann,* 142 F.3d 529 (2d Cir.1998), the district court found that the closure was only partial because ninety percent of the testimony was taken in public, the jury was present during the closure, and the transcript was not sealed. In addition, the district court found that this case was not the typical "buy and bust" case because of the extensive undercover investigation which involved several officers. As a result, Officer 6562 provided only cumulative and corroborative evidence. The State's interest in the undercover officer's safety was weighty in this situation, which involved violence and lost subjects.

■ We review *de novo* the denial of a writ of habeas corpus. *See English v. Artuz,* 164 F.3d 105, 108 (2d Cir.1998). Petitioner must prove by a preponderance of the evidence that his constitutional rights were violated. The Sixth Amendment, applicable to the states via the Fourteenth Amendment, guarantees a defendant the right to a public trial. U.S. Const. amend. VI; *Duncan v. Louisiana,* 391 U.S. 145, 148 & n. 10, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). However, this right is not absolute and, at times, must yield to other interests. In *Waller v. Georgia,* the Supreme Court stated that closure of the courtroom is justified if 1) the proponent of closure advances an overriding interest likely to be prejudiced; 2) the closure is no broader than necessary; 3) the trial court considers reasonable alternatives to closure; and 4) the trial court makes findings adequate to support closure. *See Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

■ Petitioner's sole ground for the challenge to the courtroom closure in this case is that the State failed to establish, pursuant to the first prong of the *Waller* test, that there was an overriding state

interest likely to be prejudiced if an undercover police officer were to testify in public. The State responds that it sustained its burden of proving that the undercover officer's safety would be prejudiced if he testified in open court, especially in view of the limited nature of the courtroom closure. The State argues that at the closure hearing Officer # 6562 testified that he was once threatened by a subject of an investigation. Moreover, with respect to the investigation of this case, three of Bobb's accomplices were still at large. While the State concedes that this information was not elicited before the closure hearing, it argues that such evidence was nevertheless before the court and justified closure. The undercover officer testified that his effectiveness and safety would be compromised because he could be seen and his identity would be revealed. In addition, there was a heightened risk of exposure due to the location of the trial court on a floor where there were several courtrooms devoted to narcotics cases.

The State further maintains that the courtroom closure was limited in several respects. The courtroom was closed only during the testimony of undercover officer # 6562 and the transcript of his testimony was available to the public. With respect to the nature of the testimony elicited during closure, the State argues that as in *Brown v. Kuhlmann* the undercover officer was not the centerpiece of the People's proof. Rather, Detective Thomas, who testified first and in open court, provided the most incriminating evidence. Officer # 6562, by contrast, provided corroborative and cumulative testimony on three of the seven crimes for which defendant was tried. Finally, the State urges this court to apply a harmless error analysis.[2]

■ Our analysis turns on the "overriding interest" prong of *Waller*. According to the State, the "overriding interest" advanced in this case had two facets: 1) preserving the secrecy of the officer's identity and 2) insuring his safety. We

have stated that the gravity of the interest that must be asserted by the state depends on the extent of the closure requested. *See Ayala v. Speckard,* 131 F.3d 62, 70 (2d Cir.1997) (en banc). The extent of closure encompasses such considerations as the importance of the testimony rendered during closure, the duration of closure, and the relationship of those excluded to the complaining defendant. *See English,* 164 F.3d at 108. Where the closure is extensive, "the greater must be the gravity of the required interest and the likelihood of risk to that interest." *Ayala,* 131 F.3d at 70. However, where the "closure was brief and the testimony given during closure was merely corroborative...the State's burden [is] not a heavy one, and the limited likelihood that the undercover officer's safety would be prejudiced by an open courtroom ... had sufficient weight in the balance." *Kuhlmann,* 142 F.3d at 538.

In upholding the courtroom closure in *Brown v. Kuhlmann,* this court noted that its decision depended "in large measure on the significance of the testimony during the closure itself. Specifically, this case did not involve the classic courtroom closure during the testimony of an undercover police officer who was a party to a buy-and-bust drug transaction" and provided the only testimony as to the defendant's identity. *Kuhlmann,* 142 F.3d at 534. In such a core "buy and bust" case, where the undercover officer's testimony is crucial, *Brown v. Andrews* requires that the state demonstrate "a specific connection between the perceived threat to the officer and the officer's public testimony in the particular proceeding." *Brown v. Andrews,* 180 F.3d 403, 407–08 (2d Cir.1999). In *Andrews,* Judge Calabresi stated that the particularity requirement is met if the state demonstrates, for example, 1) a reasonable relationship between the danger to the officer and the presence in the courtroom of the defendant's associates; 2) a

---

**2.** We see no need to reach this argument.

plausible fear arising from the content of the officer's testimony in light of other pending proceedings; or 3) a specific threat by a person or group not involved in the present proceedings, but whose purposes may be aided by the open testimony. *See Andrews,* 180 F.3d at 408.

We hold that the courtroom closure was justified in this case because the interest asserted by the State was sufficient in light of the limited duration of the closure, the corroborative nature of the testimony given behind closed doors, and the availability of the transcript to the public. The courtroom closure in this case was more akin to that in *Kuhlmann* than to that in *Andrews* because it was not a one-officer core "buy and bust" case. Therefore, we conclude that the State was not required to prove with particularity the connection between Officer # 6562's testimony in this case and his safety concerns. It was sufficient for the state court to have before it testimony that the officer continued to work as an undercover officer (albeit in New York County), that there were several "lost subjects" still at large from his recent investigations, and that he feared for his safety if he were to testify in public.

We have considered all of petitioner's contentions and have found them to be without merit. Accordingly, we affirm the judgment of the district court.