Albert **CRIDER**, Petitioner,

v.

Thomas **EISENSCHMIDT**, Superintendent, Gouverneur Correctional Facility, Respondent.

No. 97 CV 2514(NG).

United States District Court,
E.D. New York.

Aug. 1, 2001.

Albert Crider, pro se, for petitioner.

David O. Leiwant, Office of the District Attorney, Kings County, Brooklyn, NY, for respondent.

### ORDER

GERSHON, District Judge.

Albert Crider brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his February 15, 1995 conviction after a jury trial of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39). Petitioner was sentenced as a second felony offender to five to ten years imprisonment. The Appellate Division, Second Department, unanimously affirmed the conviction, *People v. Crider*, 236 A.D.2d 482, 654 N.Y.S.2d 29 (2d Dep't 1997), rejecting the two grounds petitioner raises here: (1) closure of the courtroom

for the testimony of Undercover Detective 1007 violated his Sixth Amendment right to a public trial; (2) under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the trial court should have disallowed the prosecution's peremptory challenge to an African–American juror as being racially motivated. Leave to appeal to the New York Court of Appeals was denied. 89 N.Y.2d 1034, 659 N.Y.S.2d 864, 681 N.E.2d 1311 (1997). Petitioner's conviction resulted from a "buy and bust" operation; petitioner and codefendant Peter Davis were found to have sold three vials containing a total of 2.2 grains of cocaine to the undercover detective.

### Courtroom Closure

This court's review of the petition is governed by the standards articulated in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which significantly limits the court's authority, in considering a habeas corpus challenge, to second-guess the state court determination. Under 28 U.S.C. § 2254(d), relief may not be granted with respect to any claim that was adjudicated on the merits in state court unless the decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law" under Supreme Court decisions; or (2) "an unreasonable determination of the facts" based on the evidence adduced in state court. *See Williams v. Artuz*, 237 F.3d 147, 151–54 (2d Cir.2001) (applying AEDPA standard to habeas challenge to trial court's order limiting courtroom access to prevent juror distraction during testimony of key witness); *Pastrana v. Senkowski*, 1999 WL 1129050, at *3–5 (E.D.N.Y.1999) (applying AEDPA standard to habeas petition challenging closure of courtroom for testimony of undercover police officer). The state court decision to close petitioner's trial during the testimony of the undercover officer was not an unrea-

sonable application of Supreme Court law on the guarantee of a public trial, and petitioner's challenge to that decision is without merit.

The partial closure of the courtroom during the testimony of Undercover Detective 1007 reasonably applied the four-part test set forth in *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Here, the closure was justified both to protect the safety of the detective and to protect his identity in order to ensure the integrity of ongoing and future investigations. The trial court appropriately reconsidered its initial denial of closure and, after hearing further testimony from Undercover Detective 1007 and his supervisor and finding it credible, determined that partial closure was necessary to safeguard the detective and to preserve his anonymity.

The detective had been engaged in the standard work of an undercover narcotics officer at the time of this incident and up until four months before trial. In that capacity, he had made approximately 100 to 150 purchases in Brooklyn, had 10 to 12 "lost" (*i.e.*, unapprehended) subjects and had 5 or 6 pending cases. The detective more recently had engaged and would continue to engage in the unusually sensitive and hazardous role of making undercover purchases of narcotics and firearms, including semi-automatic weapons, from drug dealers suspected of involvement in homicides and their associates. This activity was aimed at gathering intelligence and securing evidence and witnesses in order to solve those drug-related murders and successfully prosecute the responsible individuals. The dangerous nature of this assignment was underscored by the killing of someone from whom the detective had purchased narcotics just two weeks before his testimony. His supervisor planned to send the detective in an undercover capac-

ity back to the vicinity where the purchase in this case was made because the group currently being investigated for drug-related homicides was believed responsible for killings in that general area and members of that group were known to frequent the neighborhood, although the group's base was in a different precinct. The detective had already made purchases of narcotics and weapons from individuals involved in that investigation, which currently had 14 targets, 8 of whom were at large; the detective would attempt to make further contact in his undercover role with the remaining targets. Moreover, as the only undercover officer in the Brooklyn North Narcotics Division's Homicide Task Force, the detective was subject to being used anywhere a precinct commander in Brooklyn North required the assistance of the Narcotics Homicide Task Force, which magnified the concerns both for the detective's safety and his continued effectiveness. *See Nieblas v. Smith*, 204 F.3d 29, 33 (2d Cir.1999) (closure justified by testimony that undercover officer had been transferred to an adjacent precinct from the neighborhood where the sale took place and that "he still could have been assigned to further undercover work in the vicinity"); *McCarthy v. Portuondo*, 2001 WL 826702, at *2, 6–7 (E.D.N.Y.2001) (testimony that undercover officer expected to return to neighborhood justified partial closure of courtroom to preserve effectiveness).

The trial court therefore reasonably determined that Undercover Detective 1007 had "a particularly dangerous assignment," that the fears for his safety expressed by the detective and his supervisor were reasonable, and that his safety and effectiveness would be endangered by testifying in an open courtroom where there was a risk he would be recognized by individuals from the vicinity of this case, the area where the detective was presently

working, and other areas of Brooklyn where he may have been sent soon. The Appellate Division, in affirming the trial court decision, emphasized the testimony "that the officer and his team were involved in a long-term narcotics operation targeting members of a group or organization who had committed homicides [and was believed to be] responsible for homicides in the area of the defendant's arrest [and that the] undercover officer would, in the near future, be sent into the area of the defendant's arrest for further undercover investigation." *People v. Crider*, 236 A.D.2d at 482, 654 N.Y.S.2d 29. The Second Circuit has recognized the dangers faced by undercover officers investigating drug trafficking: "We have 'repeatedly acknowledged the dangerous nature of the drug trade and the genuine need of law enforcement agents to protect themselves from the deadly threat it may pose.'" *Brown v. Kuhlmann*, 142 F.3d 529, 537 (2d Cir.1998) (citation omitted); *see Bobb v. Senkowski*, 196 F.3d 350, 353–54 (2d Cir. 1999) (particularized showing of danger from public testimony is required for courtroom closure where the undercover officer's testimony is crux of case against defendant) (citing *Brown v. Andrews*, 180 F.3d 403, 407–08 (2d Cir.1999), *vacated*, 220 F.3d 634 (2000)). The trial court acknowledged that it necessarily had "to engage in some speculation as to the extent of the danger" from open testimony, but concluded that the "strong interests" of petitioner and his codefendant in a public trial were "outweighed by, number one, the interest in protecting this officer's safety and also the public interest in allowing this officer to continue to pursue the cases that are now open and the investigations that he's now pursuing". *See Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir.1997) (*en banc*), *cert. denied*, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 747 (1998) ("The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest .... There is no requirement that the prosecution must prove that particular individuals likely to attend the trial will disclose the officer's identity.")

The trial court also narrowly tailored closure to protect the undercover officer's safety and effectiveness, and the court considered alternatives to partial closure. The court at one point ruled that it would allow the undercover officer to testify with a blackboard placed to shield his face from courtroom spectators, an intermediate solution that no party found acceptable, but ultimately was persuaded by further testimony that the risk to the undercover detective was too great. Defense counsel did not suggest any other alternative to closure. The court also appropriately inquired, on two separate occasions, as to whether there were any particular individuals that the defendants wanted to attend during the testimony of the detective. Petitioner did not identify anyone, such as family or close friends, that he expected to attend. *Cf. English v. Artuz*, 164 F.3d 105, 108 (2d Cir.1998) (noting "special concern" for allowing attendance by accused's family). Closure was limited to the testimony of the one witness, and the transcript of testimony was not sealed and thus was available to the public and press. *Ayala*, 131 F.3d at 72.

The limited closure of the courtroom for the undercover detective's testimony therefore is consistent with governing law, especially in light of the hazardous nature of the detective's assignment, its requirement that he roam in different neighborhoods to meet the shifting investigative needs of the narcotics homicide task force and the likelihood that he would return to the vicinity of this sale, and was not an unreasonable application of the law guaranteeing the right to a public trial.

### Peremptory Challenge of Juror

Petitioner's claim that the trial court's rejection of a challenge to the prosecution's strike of an African–American juror violated his rights under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is without merit. The trial judge fully complied with the requirements of *Batson* and there is no basis for rejecting his determination that the strike was not racially motivated.

■ Early in jury selection, the trial judge found a prima facie case, based upon statistics, that the prosecution was using peremptory challenges to strike African–American jurors. He therefore required the prosecution to justify each strike of an African–American juror with a race-neutral reason, and then evaluated the reason given to determine whether to accept the reason as true and not a pretext for racial discrimination. Employing this three step process in accordance with the requirements of *Batson,* the court rejected some strikes and, in one instance, challenged here, allowed a peremptory challenge to a Ms. Wells. To begin with, the prosecutor clearly stated a race neutral reason for the challenge, namely, that the juror's daughter had been the victim of a rape, the rapist had pled guilty and received a probationary sentence, and the juror had stated that she was "somewhat satisfied" with the process. The petitioner's argument is in essence that, at step three of the *Batson* process, the trial judge should have rejected this reason and found that the true reason was racial, that is, that this court should reject the trial court's findings as to the credibility of the prosecutor in finding that racial discrimination did not occur. It is at the third step "that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purpose-

ful discrimination." *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The focus of the third step is upon the genuineness of the explanation. *Id.* at 769, 115 S.Ct. 1769. As stated in *Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." See also *Barnes v. Anderson,* 202 F.3d 150, 157 (2d Cir.1999) ("The credibility of an attorney offering a race-neutral explanation is at the very heart of [the *Batson* ] analysis."). "[T]he ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769.

■ The trial judge's factual determinations under 28 U.S.C. § 2254(e)(1) are entitled to deference, and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." After hearing arguments from counsel, the trial judge concluded:

> I find the reason given for [the] juror to be nonpretextural. She was, obviously, upset when her daughter was raped. In talking about it, she wasn't comfortable, which is also understandable. It's difficult to tell whether the discomfort that she showed when she was talking about it was due to the fact that her daughter was raped or due to dissatisfaction with the outcome of the case.

> However, I find that the reason given by the DA is not a pretext for excluding the juror because of race, but actually because of the experience that she went through with her daughter, so therefore, I will allow that challenge.

There is no sound basis for questioning the correctness of the trial judge's decision.

*Conclusion*

The petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing that he was denied a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**